**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **JAMES ROBERT WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | **Jury Trial Demanded** |
| **BRIAN J. DULANY,** | ) | |
| <u>**Serve at POE:**</u> | ) | |
| **Monroe City Police Department** | ) | |
| **300 North Main Street** | ) | |
| **Monroe City, Missouri 63456** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CLINT P. BAER,** | ) | |
| **Inmate #49513-044** | ) | |
| **FCI Forrest City Low** | ) | |
| **1400 Dale Bumpers Road** | ) | |
| **Forrest City, Arkansas 72335** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ROBERT BIAS** | ) | |
| **114 South Rollins** | ) | |
| **Centralia, Missouri 65240** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CENTRALIA POLICE** | ) | |
| **DEPARTMENT** | ) | |
| **114 South Rollins** | ) | |
| **Centralia, Missouri 65240** | ) | |
| <u>**Serve:**</u> | ) | |
| **Robert Bias** | ) | |
| **Chief of Police** | ) | |
| **114 South Rollins** | ) | |
| **Centralia, Missouri 65240** | ) | |

and                                      )
                                         )
**CITY OF CENTRALIA,**                   )
**MISSOURI,**                            )
<u>**Serve:**</u>                        )
**Heather Russell**                      )
**City Administrator**                   )
**114 South Rollins**                    )
**Centralia, Missouri 65240**            )
                                         )
            **Defendants.**              )

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, James Robert White (hereinafter "Mr. White"), by and through his counsel of record, and for his Complaint against the Defendants states and alleges the following:

## <u>STATEMENT OF CLAIMS</u>

1. This is an action for money damages, declaratory, and injunctive relief brought by Mr. White pursuant to 42 U.S.C §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 15 of the Missouri Constitution, and under other laws of the State of Missouri, against the individual Defendants, all current or former police officers with the Centralia Police Department, in their individual and official capacities, and against the City of Centralia and the Centralia Police Department.

2. Mr. White alleges that on May 19, 2019, Defendants Dulany and Baer unlawfully and without probable cause stopped his vehicle, detained him, seized his person, assaulted and battered him. Mr. White further alleges that the actions of Defendants Dulany and Baer on May 19, 2019, was a continuation of and in furtherance

2

of Defendant Baer's previous acts of stalking and harassment of Mr. White's girlfriend and possibly others. Mr. White alleges that these constitutional violations were committed as a result, at least in part, of the policies and customs of Defendants Centralia Police Department and the City of Centralia, and that these Defendants are liable to him under the theory of *respondeat superior* for the acts and/or omissions of Defendants Dulany and Baer while the latter were working within the course and scope of their employment with the former.

## JURISDICTION

3. This Court has original jurisdiction over several of the claims contained in this Complaint pursuant to 28 U.S.C. §1331 (Federal Question), 28 U.S.C. §1343 (Civil Rights), 28 U.S.C. §2201 (Declaratory Relief) and 42 U.S.C. §§1981, 1983 and 1988.

4. This Court also has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. §1367.

5. This action arises under the United States Constitution as applied to state and/or local authorities pursuant to 42 U.S.C. §1983.

## VENUE

6. Venue is proper in this District based on 28 U.S.C. §1391(b) because the Defendants are or were residents of this District and the acts or occurrences giving rise to Mr. White's claims occurred in Boone County, Missouri, which is within this District. W.D.Mo. L.R. 3.2(a)(2).

## PARTIES

7. The Plaintiff, Mr. White, is an adult citizen and resident of Centralia, Boone County, Missouri.

8. Defendant Brian J. Dulany (hereinafter "Defendant Dulany") is a law enforcement officer formerly employed by the Centralia Police Department and/or the City of Centralia as a Patrolman. Defendant Dulany was terminated by the Centralia Police Department and/or the City of Centralia for budgetary reasons and not because of his misconduct set forth herein. Officer Dulany is now employed as a law enforcement officer by the Monroe City Police Department and/or the City of Monroe City, located in Monroe City, Missouri. Upon information and belief, Monroe City, Missouri, is located in Marion, Monroe and Ralls counties. Officer Dulany is sued in his individual and official capacities.

9. Defendant Clint P. Baer (hereinafter "Defendant Baer") was formerly a law enforcement officer employed by the Centralia Police Department and/or the City of Centralia as a Patrolman. Officer Baer was terminated from that position on or about October 8, 2019, after he was charged in the Federal District Court in St. Louis, Missouri, in the case of *United States v. Clint Baer*, Case No. 4:19-cr-00842, with the crime of using interstate commerce for the purpose of engaging in illicit sexual conduct with a minor. According to an October 8, 2019, Press Release from the U.S. Attorney's Office:

> **Over the course of months, Baer exchanged sexually detailed and explicit text messages and phone calls, via FetLife and Kik messenger, with the undercover agent. In Baer's sexually explicit messages, he expressed his desire to engage in sexual activity with the 14-year old girl as well as the mother.**

4

**On October 1, 2019, Baer contacted the undercover agent, believing he was speaking with the mother of the 14-year-old girl, and set up a time and location to have sexual activity with the mother of the child and the 14-year-old girl. On October 7, 2019, Baer travelled from Centralia, Missouri, to Wentzville, Missouri, for the purpose of engaging in sexual activity with both. Baer was arrested in Wentzville. Baer is currently in federal custody.**

Defendant Baer entered a guilty plea on or about October 26, 2020, to the same crime and on or about February 9, 2021, was sentenced to serve 96 months in federal prison. As a result of these criminal charges and Defendant's guilty plea, he is presently in federal custody and following sentencing is in the custody of the Federal Bureau of Prisons. Upon information and belief, Defendant Baer was not terminated by the Centralia Police Department and/or the City of Centralia due to his misconduct of May 19, 2019, as set forth herein. Rather, he was terminated as the result of the federal criminal charges filed against him (to which he entered a guilty plea and has now been sentenced to serve 8 years in prison). Defendant Baer is sued in his individual and official capacities.

10. Defendant Robert Bias (hereinafter "Defendant Bias" or "Chief Bias") is a lawenforcement officer and since September 3, 2018, has been employed by the Centralia Police Department and/or the City of Centralia as the Chief of Police. Upon information and belief, Chief Bias replaced former Police Chief Larry Dudgeon who resigned in 2018 under a cloud of allegations of creating a hostile work environment, sexual harassment and other unspecified illegal activity. Chief Bias is sued in his individual and official capacities.

11.  Defendant Centralia Police Department (hereinafter "Centralia Police Department" or "CPD") is a municipal entity operated by the City of Centralia.  The Chief of Police for the Centralia Police Department reports directly to the City Administrator for the City of Centralia.  Upon further information and belief, the Centralia Police Department has long been known for staffing itself with "cast-offs" from other police departments, many of whom separated from prior employment in the law enforcement field due to misconduct, and/or were sexual deviants like Defendant Baer.

12.  Defendant City of Centralia  (hereinafter "City of Centralia" or "COC") is classified by applicable Missouri law as a Fourth Class city located in Boone County, Missouri and the public employer of Defendants Dulany, Baer and Bias.  It operates and governs the Centralia Police Department pursuant to the laws of the State of Missouri.  In this case the City of Centralia acted through its agents, employees and servants, including Defendants Dulany, Baer, Bias and the Centralia Police Department.

13.  All Defendant law enforcement officers, agents, and/or employees were, at all times relevant to this Complaint, working as on-duty licensed Missouri law enforcement officers acting under color of state law and within the course and scope of their official duties and employment as law enforcement officers for the Centralia Police Department and/or the City of Centralia.

## FACTS

14.  On May 19, 2019, Mr. White was a resident of Centralia, Boone County, Missouri, and was operating a 1993 Dodge Dakota pickup truck.  That night, Mr. White had driven his truck to a Casey's Convenience Store, located at 208 West Mo-22,

Centralia, Missouri, to pick up his girlfriend, who was an employee at the Casey's Store and getting off of work.

15.  Mr. White had been advised by his girlfriend that she was being stalked and harassed by Defendant Baer, at work and elsewhere, while Defendant Baer was working as a law enforcement officer for the Centralia Police Department and/or the City of Centralia.

16.  Defendant Baer had previously stalked and harassed Mr. White's girlfriend, while he was in police uniform and presumed to be on duty, and had also stopped at her place of employment, followed her home, and drove his police vehicle alongside her at slow speeds.  Such misconduct on the part of Defendant Baer was concerning to Mr. White, his girlfriend and her employer.  So much so that her employer told her not to walk home after work and this is why Mr. White picked her up at her place of employment on May 19, 2019.  In light of Defendant Baer's criminal activities, arrest, guilty plea, and prison sentence, those concerns were certainly reasonable and justified.

17.  Unbeknownst to Mr. White, the Centralia Police Department had much earlier in the night received a report of a vehicle traveling without headlights, taillights or any illumination at all.  The report had been made earlier in the night and the location of this alleged vehicle was a significant distance from the Casey's Store.  Even so, Defendant Dulany, who was on-duty that night, saw Mr. White's truck at Casey's and used the earlier call as an excuse to harass Mr. White.  Defendant Dulany did not make contact with Mr. White at the lighted convenience store, located on Missouri Highway 22 and presumably with potential witnesses present, to see if there were problems with the

7

lighting equipment on his truck. Instead, Defendant Dulany parked his police vehicle a block or so away and across the street, near the La Crosse Lumber Store, in what appeared to be an attempt to conceal himself from Mr. White and others. He then waited for Mr. White and his girlfriend to leave the Casey's Store in Mr. White's vehicle so that he could then confront them over in a less conspicuous location and with no witnesses present.

18. Defendant Dulany's effort to conceal himself failed when Mr. White, after exiting the Casey's Convenience Store, saw Defendant Dulany "hiding" at the nearby lumber company.

19. Almost immediately after Mr. White and his girlfriend left the convenience store and headed down Hickman Street, a residential street in Centralia, Defendant Dulany left his "hiding place" at the lumberyard, disregarded a stop sign, pulled in behind Mr. White's vehicle, activated his emergency lights and pulled over Mr. White's vehicle. Defendant Dulany's police car was equipped with a "Dash Camera" and the video from the "Dash Camera" clearly shows that the brake and turn signal lights on Mr. White's vehicle were operable at the time he was pulled over by Defendant Dulany and also shows that Mr. White almost immediately pulled over, in a safe and prudent manner, and also initiated his right turn signal in doing so.

20. Immediately upon pulling Mr. White's vehicle over, Defendant Dulany used the spotlight on his police vehicle to flood the cab of Mr. White's vehicle with light and to obscure the rearward vision of the vehicle's occupants. Although Defendant Dulany had a body camera, he did not turn the camera on until sometime after he initially made

8

contact with Mr. White. Defendant Dulany later turned on his body camera and some of the interaction between himself and Mr. White are captured on the camera. In addition, Mr. White's girlfriend captured some of the events of May 19, 2019, on her cellphone.

21. Within seconds after Defendant Dulany pulled over Mr. White, Defendant Baer appeared on the scene. It is unknown at this time whether Defendant Dulany called for Defendant Baer to respond to the scene of the stop or not.

20. Almost immediately, both Defendants Dulany and Baer can be seen acting overly aggressive toward Mr. White and can also be heard yelling orders at Mr. White, including an order that Mr. White get out of his vehicle. In particular, Defendant Dulany can be heard saying "[L]et me see your ass" on his body camera, in what would appear to be an agitated state of mind. Before turning on his body camera, Defendant Dulany can be seen on the "dash camera" placing his hand on the door handle of Mr. White's truck multiple times and trying to open the door. Even though Mr. White did not roll his window down and immediately exit his vehicle, he and Defendants Dulany and Baer were able to and did communicate with one another as is proven by Defendant Dulany's body camera.

21. Mr. White calmly inquired as to why he had been pulled over, but Defendants Delany and Baer refused to answer his question. Sensing increasing hostility on the part of Defendants Dulany and Baer, and fearing for his safety and that of his girlfriend, who had previously been stalked and harassed by Defendant Baer, Mr. White then asked if a supervisor could be called to the scene. Defendant Dulany immediately responded that no supervisor was available and on the "dash camera" Defendant Dulany can be seen

9

placing his hand on his gun.   Again, for a traffic stop involving a suspected equipment violation.

22.  Defendant Dulany's body camera video (once he turned it on) and the "dash camera" also show that when Defendant Baer quickly arrived on the scene he immediately pulled and exhibited an electric shock device (commonly referred to and known as a "Taser").   Perhaps realizing that the Taser device could not be deployed through the glass of Mr. White's truck, Defendant Baer can then be seen deploying and exhibiting another weapon (i.e.  a metallic, telescopic police baton) in a menacing and threatening manner.   Again, for a traffic stop involving a suspected equipment violation.

23. Mr. White then rolled down his window and can be heard asking Defendants Dulany and Baer to calm down and again asking why he was being pulled over.   When Defendant Dulany finally advised Mr. White that the taillights on his truck were not working (which, as can be evidenced by Defendant Dulany's "Dash Camera," was not entirely true), Mr. White began to produce his driver's license when Defendant Dulany suddenly and without warning reached into Mr. White's vehicle, unlocked the door, opened it, and then violently drug Mr. White from his vehicle.   In the process of doing so, Defendant Dulany slammed Mr. White's to the pavement, but only after twisting one of Mr. White's arms behind Mr. White's back.   At the time of these actions on the part of Defendant Delany, Mr. White was attempting to comply with Defendant Delany's command to produce his driver's license while at the same time trying to de-escalate the situation.   Mr. White can also be heard repeatedly asking "[W]hat are you doing?" Again, for a traffic stop involving a suspected equipment violation.

24.  After being violently slammed to the pavement by Defendant Dulany, Mr. White can be heard complaining of the injury to his shoulder.  Even after hearing those cries of injuries made by Mr. White after being thrown to the pavement, Defendant Dulany can be heard instructing Mr. White to "relax" and to "lay down."   Defendant Dulany can also be overheard telling Mr. White "[J]ust cooperate and I won't have to hurt you."

25.  After the obvious injuries to Mr. White, including the very serious injury to his shoulder, Defendants Dulany and Baer then placed Mr. White in very tight handcuffs and rolled him onto his injured shoulder.  Defendants Dulany and Baer ignored Mr. White's cries of pain and then picked him up off the pavement by the same injured shoulder.  When Mr. White asked the Defendants what was wrong with them, he was instructed to get into Defendant Dulany's police vehicle.  He complied with that request and, as he had done throughout the entire ordeal, offered no resistance.

26.  All of these circumstances suggest that Defendants Dulany and Baer were attempting to provoke Mr. White into a physical confrontation with them.  However, Mr. White resisted the temptation and acted as calmly as possible during his ordeal.

27.  After dragging Mr. White from his truck and throwing him violently to the pavement, where he was handcuffed, Defendant Dulany then issued Mr. White a traffic ticket for an equipment violation wherein it was alleged that Mr. White had violated Centralia City Ordinance 18-42 and released him.   Defendant Dulany can also be overheard stating that he was not going to cite Mr. White for resisting arrest, though the evidence clearly shows Mr. White did no such thing.

11

28.  The traffic ticket was later dismissed by the Centralia City Attorney, no doubt in part because even a cursory review of Defendant Dulany's "Dash Camera" confirms the brake lights and turn signals on Mr. White's truck were operating at the time he was pulled over and stopped by Defendants Dulany and Baer.  As a result, the conduct of Defendants Dulany and Baer was simply for harassment and/or ulterior motives wholly unrelated to any proper law enforcement function.

28.  Such misconduct on the part of Defendant Baer, whom Defendant Dulany was believed to be aiding and abetting at the time, was also a pattern of conduct on Defendant Baer's part which culminated in his later guilty plea in *United States v. Clint Baer*, Case No. 4:19-cr-00842 to the federal crime of using interstate commerce for the purpose of engaging in illicit sexual conduct with a minor; for which he received a sentence of 96 months in federal prison.  It is also believed that the result of his guilty plea, Defendant Baer will be required to register as a sex offender for the rest of his natural life.

29.  When on May 19, 2019, Mr. White advised Defendant Dulany of Defendant Baer's misconduct as it related to his girlfriend, Defendant Dulany replied that he had no problem with Mr. White reporting such misconduct to the administrators of the Centralia Police Department, as with past situations Defendant Dulany knew or had reason to suspect that such complaints would fall on deaf hears.  Indeed, it is believed that Defendant Baer was actually emboldened in the acts leading to the federal charge described above by reason of the fact that such misconduct and misbehavior had been

tolerated in the past by Defendants Centralia Police Department and/or the City of Centralia.

30.   As a direct and proximate result of the acts and/or omissions of the Defendants, Mr. White suffered the following injuries and damages:

a.     A full thickness tear of his rotator cuff requiring surgical intervention;

b.     An extreme exacerbation of existing psychological injuries, including a diagnosis of post-traumatic stress disorder;

c.     Violations of his constitutional rights under the United States Constitution and the Missouri Constitution to be free from unreasonable unreasonable seizures of his person;

d.     Violations of his constitutional rights under the United States Constitution and the Missouri Constitution to be free from being subjected to excessive force;

e.     Loss of his physical liberty;

f.     Intentional, offensive contact with his body;

g.     Economic losses incurred as the result of having to care for his injuries and retain legal counsel, including, but not limited to the physical inability to complete work to his home as required by his lender; and

h.     Non-economic losses incurred as the result of criminal charges being filed against him and otherwise.

31.  At all relevant times, the Defendants were acting under color of law and under color of authority as law enforcement officers, employees and agents or servants of Defendants Centralia Police Department and/or the City of Centralia.

32.  On May 19, 2019, Mr. White had a clearly established constitutional right to be free from warrantless searches and seizures and also to be free from excessive force.

33.  Mr. White did not pose a threat to Defendants Dulany or Baer.  Even so, Defendant Dulany forcibly unlocked and opened the door to Mr. White's vehicle, forcibly pulled Mr. White from his vehicle, twisted Mr. White's arm, then threw him to the ground causing serious injuries; all for an alleged equipment violation ticket that was later dismissed by the City Attorney.

34.  Defendants Dulany and Baer knew or reasonably should have known of the danger they placed Mr. White into by the assault upon him and each knew or should have known that their actions could result in pain, suffering and harm to Mr. White.  Upon information and belief, the traffic stop by Defendant Dulany was a ruse so that Defendant Baer could continue his stalking and harassment of Mr. White's girlfriend; with whom Defendant Baer had apparently become obsessed and/or an attempt to provoke Mr. White into a confrontation with armed police officers. Defendant Dulany aided and abetted Defendant Baer's obsession by his acts and/or omissions as set forth herein and also by leaving Defendant Baer in close proximity to Mr. White's girlfriend, while Mr. White was seriously injured, handcuffed, incapacitated and later placed into Defendant Dulany's police car.

35.   The actions of Defendants Dulany and Baer as set forth herein constituted clear excessive force and violated police standards as well as community standards of common decency.

36.   Defendant Dulany and other officers of the Centralia Police Department each knew of and had an obligation to stop Defendant Baer's stalking and harassment of Mr. White's girlfriend and likely others,  but did not do so.  In fact, upon information and belief, they aided and abetted his misbehavior.    In addition, Defendant Baer had an obligation to stop Defendant Dulany's use of excessive force upon Mr. White on the night in question, but did nothing.  In fact, after Mr. White was forcibly removed from his vehicle, slammed to the ground, and taken to Defendant Dulany's police car, Defendant Baer can be seen standing outside the vehicle, on the passenger side of the police car where Mr. White was detained, and staring at him in a threatening and menacing manner.

37.   Defendants Delany and Baer acted intentionally and/or recklessly and with deliberate disregard to Mr. White's constitutional and common law rights and in intentional or reckless disobedience of the Centralia Police Department and/or City of Centralia  rules and regulations as written and enacted.

38.   Defendants Bias, Centralia Police Department and/or the City of Centralia failed to investigate or take corrective action(s) to prevent excessive force violations and/or providing false and inaccurate information in reports and other similar documents from ever happening again.  In addition, the evidence suggests that Defendants Dulany, Bias, other members of the Centralia Police Department and/or the City of Centralia,

aided and abetted Defendant Baer's stalking and harassment of Mr. White's girlfriend and perhaps others, including minor children.

39.   The Defendants' actions as described herein deprived Mr. White of his right to be free from illegal and unlawful arrest, and/or excessive force and the Defendants were motivated by an unconstitutional enforced policy, pattern of practice, or custom by the Centralia Police Department and/or the City of Centralia.

40.   Neither the Centralia Police Department nor the City of Centralia, enacted and/or enforced any policies against illegal and unlawful arrests, and/or excessive force, nor did they properly document instances of alleged illegal and unlawful arrest, and/or excessive force, nor did they investigate instances of illegal and  unlawful arrest, and/or excessive force; and in so doing both Defendants engaged in a policy, pattern of practice or custom of failing to reprimand and/or otherwise discipline any officer for engaging in illegal and unlawful arrests, and/or excessive force.  Moreover, it would appear that all of the Defendants had knowledge or notice of Defendant Baer's illegal behavior and sexual deviancy, but took no steps to address said misbehavior or to warn others of same. Indeed, it would appear as though such illegal behavior was ignored, or worst yet, the Defendants aided and abetted such illegal behavior.  By doing so, the Centralia Police Department and/or the City of Centralia tacitly or explicitly approved of such misconduct and illegal behavior by its law enforcement officers.

**Injunctive Relief**

41.   As the result of the illegal searches and seizures, unlawful arrest, and/or excessive force to which he was subjected on May 19, 2019, Mr. White feels violated and degraded.   He also fears that he could be subjected to illegal searches and seizures, unlawful arrest, and/or excessive force by the Defendants in the future because he still lives in the Centralia community.   Mr. White is also concerned that he will continue to be targeted because of the May 19, 2019, incident described above and also because he has now commenced this lawsuit.

**COUNT I**
**42 U.S.C. §1983 (Fourth Amendment-Unlawful Arrest and Excessive Force)**
**Defendants Dulany and Baer**

42.   All previous Paragraphs set forth above are incorporated herein by reference as though fully set forth.

43.   Mr. White makes a claim under 42 U.S.C. §1983 for the violation of the Fourth Amendment of the U.S. Constitution for the unlawful arrest and use of excessive force upon him on May 19, 2019.

44.   The Fourth Amendment to the U.S. Constitution did not permit Defendants Dulany and Baer to unlawfully arrest Mr. White and/or to use excessive force upon him in conjunction with the unlawful arrest and issuance of an equipment violation that was later dismissed by the City Attorney.

45.   The unlawful arrest of Mr. White and the use of excessive force upon him by Defendants Dulany and Baer was not reasonable under the circumstances.

46. As a direct and proximate cause of the actions of Defendants Dulany and Baer on May 19, 2019, Mr. White has suffered damages as set forth herein.

**COUNT II**
**42 U.S.C. §1983 (Fourth Amendment-Unlawful Arrest and Excessive Force)**
**Defendants City of Centralia and Centralia Police Department**

47. All previous Paragraphs set forth above are incorporated herein by reference as though fully set forth.

48. Defendants City of Centralia and the Centralia Police Department are liable for Constitutional violations under 42 U.S.C.§1983 when the execution of its official policies or customs deprive an individual of rights protected under the U.S. Constitution. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978).

49. Such liability exists where a governmental entity fails to properly train, supervise and/or discipline its employees and in so doing exhibits a deliberate indifference to one's Constitutionally-protected rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

50. At all times relevant hereto, Defendants City of Centralia and Centralia Police Department had a duty to properly train, supervise and/or discipline their employees and agents, including Officers Dulany and Baer.

51. Defendants City of Centralia and/or the Centralia Police Department breached that duty, in part, by:

    a. Improperly training, authorizing, encouraging and directing law enforcement officers, including Officers Dulany and Baer, on arrest practice and procedures and proper use of force;

18

b. Failing to properly investigate allegations of illegal arrest and/or excessive use of force; and

c. Failing to discipline officers for violations of policy related to lawful arrests and excessive force.

52.  The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned by Defendants City of Centralia and Centralia Police Department, as evidenced by the conduct of Officers Dulany and Baer on May 19, 2019, and the failures of Defendants City of Centralia and Centralia Police Department to train, supervise, investigate, and/or discipline any of the officers involved in this incident with Mr. White.  All of which resulted in a deliberate disregard and indifference to Mr. White rights as guaranteed and protected by the U.S. Constitution.

53.  The unconstitutional behavior of its law enforcement officers is carried out pursuant to a policy, pattern of practice, or custom, be it formal or informal, by Defendants City of Centralia and Centralia Police Department, which violates the rights of individuals such as Mr. Whie, which are guaranteed and protected by the U.S. Constitution.

54.  The condoning of misconduct and the failure to end this policy, pattern of practice or custom by the City of Centralia and the Centralia Police Department was the proximate cause of the injuries and damages suffered by Mr. White as set forth above.

## COUNT III
### Assault
### Defendants Dulany, Baer,
### Centralia Police Department and City of Centralia

55. All previous Paragraphs set forth above are incorporated herein by reference as though fully set forth.

56. By their actions as set forth above, Defendants Dulany and Baer intended to cause bodily harm or offensive contact, or apprehension of either to Mr. White.

57. By their conduct as set forth above, Defendants Dulany and Baer indicated such intent to Mr. White.

58. By their conduct as set forth above, Defendants Dulany and Baer placed Mr. White in apprehension of bodily harm or offensive contact.

59. On May 19, 2019, Defendants Dulany and Baer assaulted Mr. White by unlawfully offering, attempting or threatening to injure him with the apparent present ability to effectuate the injury under circumstances creating fear of imminent peril as to Mr. White.

60. At the time Defendants Dulany and Baer assaulted Mr. White, they were employees, officers and/or agents of Defendants City of Centralia and Centralia Police Department acting within the course and scope of their employment and/or agency relationship with Defendants Centralia Police Department and City of Centralia such they are liable for said acts and/or omissions.

61.  As a direct and proximate cause of the acts and/or omissions of Defendants Dulany, Baer, Centralia Police Department and City of Centralia, Mr. White has suffered damages as set forth herein.

<u>**COUNT IV**</u>
**Battery**
**Defendants Dulany, Centralia Police Department and City of Centralia**

62.  All previous Paragraphs set forth above are incorporated herein by reference as though fully set forth.

63.  By his actions as set forth above, Defendant Dulany intended to cause harmful or offensive contact to Mr. White.

64.  By his conduct as set forth above, Defendant Dulany did batter by Mr. White by engaging in harmful or offensive contact with him and indicated such intent to Mr. White, including the bodily contact described above.

65.  At the time Defendant Dulany battered Mr. White, he was an employee, officer and/or agent of Defendants City of Centralia and Centralia Police Department acting within the course and scope of their employment and/or agency relationship with Defendants  Centralia Police Department and City of Centralia such they are liable for said acts and/or omissions.

66.  As a direct and proximate cause of the acts and/or omissions of Defendants Dulany, Centralia Police Department and City of Centralia, Mr. White has suffered damages as set forth herein.

## COUNT V
### Intentional Infliction of Emotional Distress
### Defendants Dulany, Baer,
### Centralia Police Department and City of Centralia

67. All previous Paragraphs set forth above are incorporated herein by reference as though fully set forth.

68. On May 19, 2019, Defendants Dulany and Baer acted intentionally or recklessly with regard to Mr. White, their conduct was extreme and outrageous and was the cause of or contributed to cause several emotional distress to Mr. White.

69. On May 19, 2019, Defendant Dulany and Defendant Baer were employees, officers and/or agents of Defendants City of Centralia and Centralia Police Department acting within the course and scope of their employment and/or agency relationship with Defendants Centralia Police Department and City of Centralia such they are liable for said acts and/or omissions.

70. As a direct and proximate cause of the acts and/or omissions of Defendants Dulany, Baer, Centralia Police Department and City of Centralia, Mr. White has suffered damages as set forth herein.

## COUNT VI
### Negligence: Negligent Hiring, Negligent Retention, Negligent Supervision
### Against Defendants Bias City of Centralia, and Centralia Police Department,

71. All previous Paragraphs set forth above are incorporated herein by reference as though fully set forth.

72. All of the individual Defendants named in this Complaint are employees, officers and/or agents of Defendant City of Centralia and/or Centralia Police Department.

73. All of the acts and/or omissions of the individual Defendants named in this Complaint were conducted within the course and scope of their employment, agency or duties with Defendant City of Centralia and/or Centralia Police Department.

74. Defendants Bias, City of Centralia and the Centralia Police Department owed a duty of care to Mr. White to exercise reasonable care in hiring, training, retaining, and supervising its employees, including, but not limited to, Officers Dulany and Baer.

75. Defendants Bias, City of Centralia, and the Centralia Police Department, breached their duty of care to Mr. White by failing to properly hire, train, retain and supervise employees including, but not limited to, Officers Dulany and Baer

76. Defendant Bias was a superior officer to Officers Dulany and Baer and owed a separate duty to Mr. White to properly supervise Officers Dulany and Baer.

77. As a direct and proximate cause of the actions of negligence of the Defendants as aforesaid, Mr. White has suffered damages as set forth herein.

## DECLARATORY RELIEF

78. This lawsuit involves an actual controversy within the Court's original jurisdiction and as a result, this Court may declare the rights of Mr. White under the Constitution and laws of the United States as well as the Constitution and laws of Missouri and grant such relief to Mr. White as is necessary and proper.

79. Mr. White seeks declaratory relief on his behalf.

80. Mr. White seeks a declaratory judgment that the Defendants' policies, pattern of practice, lack of supervision, failure to train, acts and/or omissions described herein violate the Fourth Amendment to the U.S. Constitution, Article I, Section 15 of the

23

Missouri Constitution, and constitute excessive force in violation of federal law and Missouri state law.

## PRAYER FOR RELIEF

WHEREFORE, Mr. White respectfully requests that this Court enter Judgment in his favor and against the Defendants, and each of them, and granting the following relief:

a.  Enter a declaratory judgment on behalf of Mr. White that the Defendants' policies, pattern of practice, lack of supervision, failure to train, acts and/or omissions described herein violate the Fourth Amendment to the U.S. Constitution, Article I, Section 15 of the Missouri Constitution, and constitute excessive force in violation of federal law and Missouri state law;

b.  Enter Judgment on behalf of Mr. White and against all of the Defendants for his reasonable actual damages sufficient to compensate him for the violations of his rights protected by the U.S. Constitution, the Missouri Constitution, and under Missouri state law;

c.  Permanently enjoin and prohibit the Defendants from interfering with Mr. White's constitutional rights, including, but not limited to:

1.  Retaliating against him or his family for bringing this lawsuit; and

2.  Subjecting him to excessive force in the future;

d.  Ordering the Defendants to pay punitive and other exemplary damages based upon 42 U.S.C. §1983;

e.  Ordering the Defendants to pay Mr. White's attorney's fees and costs as authorized by 42 U.S.C. §1983;

24

f. Ordering the Defendants to pay pre-judgment interest and any other relief deemed necessary and proper; and

g. Grant all other and additional relief to which Mr. White may be entitled.

## **JURY DEMAND**

Mr. White respectfully demands a jury trial in the aforementioned matters.

*/s/ Danieal H. Miller*
DANIEAL H. MILLER, MB#29082
JAMES P. BARTON, JR. #34782
DANIEAL H. MILLER, PC
720 W. Sexton Road
Columbia, MO 65203
573-443-1645
573-874-3159 (fax)

ATTORNEY FOR PLAINTIFF

25