# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JAMES ROBERT WHITE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:21-cv-04103-MDH |
| BRIAN J. DULANY, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Brian J. Dulany's, Robert Bias', Centralia Police Department's, and City of Centralia, Missouri's ("City") (together "Defendants") Motion to Dismiss. (Doc. 8). The only non-moving Defendant is Clint P. Baer. For the reasons set forth herein, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The facts as set forth in Plaintiff's Complaint are incorporated herein. For purposes of ruling on a motion to dismiss, the Court accepts these facts as true. On May 19, 2019, Plaintiff was a resident of Centralia, Boone County, Missouri, and was operating a 1993 Dodge Dakota pickup truck. That night, Plaintiff had driven his truck to a Casey's Convenience Store, located at 208 West Mo-22, Centralia, Missouri, to pick up his girlfriend, who was an employee at the Casey's Store and getting off of work. Plaintiff had allegedly previously been advised by his girlfriend that she was being stalked and harassed by a Centralia Police Officer by the name of Clint Baer, both at work and elsewhere, and that the acts of stalking and harassment been allegedly perpetrated by Baer while he was in police uniform, on duty, and also while Baer was operating a marked police vehicle. The alleged stalking and/or harassment perpetrated by Baer at

Plaintiff's girlfriend's place of employment was allegedly noticed by the girlfriend's supervisor such that the girlfriend was told by her supervisor not to walk home after work.

The Centralia Police Department allegedly received a report of a vehicle traveling without headlights, taillights or any illumination at all. The report had allegedly been made much earlier in the night and the location of this alleged vehicle was a significant distance from the Casey's Store. Even so, Brian Dulany, who was on-duty that night as an Officer with the Centralia Police Department, saw Plaintiff's truck at Casey's and allegedly used the earlier call as an excuse to harass Plaintiff. Dulany allegedly parked his police vehicle a block or so away and across the street, near the La Crosse Lumber Store, in what he allegedly admitted was an attempt to conceal himself from Plaintiff and others and surveil Plaintiff. He then allegedly waited for Plaintiff and his girlfriend to leave the Casey's Store in Plaintiff's vehicle so that he could then confront them in a less conspicuous location.

Almost immediately after Plaintiff and his girlfriend left the convenience store and headed down Hickman Street, a residential street in Centralia, Dulany allegedly left his "hiding place" at the lumberyard, disregarded a stop sign, pulled in behind Plaintiff's vehicle, activated his emergency lights and pulled over Plaintiff's vehicle. Dulany's police car was equipped with a "Dash Camera" and the video from the "Dash Camera" allegedly clearly shows that the brake and turn signal lights on Plaintiff's vehicle were operable at the time he was pulled over by Dulany and also allegedly shows that Plaintiff almost immediately pulled over, in a safe and prudent manner.

Immediately upon pulling Plaintiff's vehicle over, Dulany allegedly used the spotlight on his police vehicle to flood the cab of Plaintiff's vehicle with light and to obscure the rearward vision of the vehicle's occupants. Although Dulany was wearing a body-worn camera, he did not

turn the camera on until sometime after he initially made contact with Plaintiff. At that time, the body-worn camera captured some of the interaction between himself and Plaintiff. Additionally, Plaintiff's girlfriend captured some of the events of May 19, 2019, on her cellphone.

Within a matter of seconds after Dulany pulled over Plaintiff, Clint Baer appeared on the scene. Plaintiff alleges that both Dulany and Baer can be seen acting in an overly aggressive manner toward Plaintiff and can also be heard yelling at Plaintiff, including a demand that Plaintiff get out of his vehicle. In particular, Dulany can allegedly be heard saying "[L]et me see your ass" on his body camera. Before turning on his body camera, Dulany can allegedly be seen on the "dash camera" placing his hand on the door handle of Plaintiff's truck multiple times and trying to open the door.

Plaintiff apparently inquired as to why he had been pulled over, but Delany and Baer allegedly refused to answer his question. Plaintiff then asked if a supervisor could be called to the scene. Dulany allegedly immediately responded that no supervisor was available and Dulany can allegedly then be seen on the dash camera placing his hand on his gun.

Dulany's body camera video and the "dash camera" also allegedly show that when Baer quickly arrived on the scene he almost immediately pulled and exhibited an electric shock device (commonly referred to and known as a "Taser"). Baer can then allegedly be seen deploying and exhibiting another weapon (i.e. a metallic, telescopic police baton).

At that point in the stop, Plaintiff allegedly rolled down his window and can be heard asking Dulany and Baer to calm down and again asking why he was being pulled over. When Dulany finally advised Plaintiff that the taillights on his truck were not working, Plaintiff began to produce his driver's license when Dulany allegedly suddenly and without warning reached into Plaintiff's vehicle, unlocked the door, opened it, and then violently drug Plaintiff from his

3

vehicle. In the process of doing so, Dulany allegedly slammed Plaintiff to the pavement, after twisting one of Plaintiff's arms behind Plaintiff's back. At the time of these actions on the part of Delany, Plaintiff was allegedly attempting to comply with Delany's request for his driver's license while at the same time trying to de-escalate the situation. Plaintiff can also allegedly be heard on the dash camera repeatedly asking "[W]hat are you doing?"

After allegedly being violently slammed to the pavement by Dulany, Plaintiff can be heard complaining of the injury to his shoulder. Dulany can allegedly be heard instructing Plaintiff to "relax" and to "lay down." Dulany can also allegedly be overheard telling Plaintiff at that time "[J]ust cooperate and I won't have to hurt you."

After the injury to Plaintiff, Dulany and Baer then allegedly placed Plaintiff in very tight handcuffs and rolled him onto his injured shoulder. Dulany and Baer then picked him up off the pavement by the same injured shoulder. Plaintiff was instructed to get into Dulany's police vehicle. He complied with that request.

After allegedly dragging Plaintiff from his truck and throwing him violently to the pavement, where he was handcuffed, Dulany then issued Plaintiff a traffic ticket for an equipment violation wherein it was alleged that Plaintiff had violated Centralia City Ordinance 18-42 and he was released. Dulany can also be overheard stating that he was not going to cite Plaintiff for resisting arrest.

Plaintiff was allegedly later diagnosed with and treated for a full thickness tear of the rotator cuff on his injured shoulder as well as an extreme exacerbation of existing psychological injuries, including a diagnosis of post-traumatic stress disorder. He also allegedly incurred other non-medical injuries and damages as set forth in more detail in his Complaint.

Plaintiff's Complaint advances both civil rights and state tort theories of recovery against Defendants. In particular, Plaintiff argues that Defendants Dulany and Baer unlawfully and without probable cause stopped Plaintiff's vehicle, detained him, seized his person, assaulted, and battered him. Plaintiff also alleges intentional infliction of emotional distress against Defendants. Plaintiff also argues that the alleged constitutional violations were committed, as a result, of the policies and customs of the Police Department and the City. Plaintiff appears to request injunctive relief, declaratory relief, actual damages, and punitive damages.

## STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *NEXTEP, LLC v. Kaba Benzing America, Inc.*, 2007 WL 4218977, *1 (E.D. Mo. 2007). When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are considered in the light most favorable to the plaintiff. *Id*. To avoid dismissal for failure to state a claim, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. This statement requires that the plaintiff give the defendant facts sufficient to give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id*. The court may dismiss the complaint when it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint. *See id.*

## DISCUSSION

The Complaint alleges six Counts against Defendants. Count I purports to state a claim under 42 U.S.C. § 1983 for violations of Plaintiff's Fourth Amendment rights to be free from unlawful arrest and excessive force against Dulany and Baer. Count II alleges the same against

the City and Centralia Police Department. Count III[1] and IV allege assault and battery respectively against Dulany, Centralia Police Department, and the City. Count V purports to state a claim for intentional infliction of emotional distress against Dulany, Baer, Centralia Police Department, and the City. Finally, Count VI alleges negligent hiring, retention, and supervision against Bias, the City, and Centralia Police Department.

### A. Plaintiff's claim for injunctive relief is dismissed[2]

First, Plaintiff makes a request for injunctive relief in which he indicates that he is fearful he could be "subjected to illegal searches and seizures, unlawful arrest, and/or excessive force by the Defendants in the future because he still lives in the Centralia community."

In order to properly plead a request for injunctive relief, the Plaintiff must set forth the following: (1) the threat of irreparable harm to the movant; (2) the state of the balance between the harm and the injury that granting the injunction will inflict on other party litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). No single factor is dispositive. *Id.* at 113. However, absent a showing of real or immediate threat, there can be no showing of irreparable injury. *Randolph v. Rogers*, 170 F.3d 850, 856 (8th Cir. 1999) (quoting *City of Los Angles v. Lyons*, 461 U.S. 95, 111 (1983)). The burden of proving that a preliminary injunction should be issued rests entirely with the movant. *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

Here, Plaintiff has failed to sufficiently plead that any of the aforementioned components necessary for proving that injunctive relief, is in fact, warranted. Most significantly, Plaintiff has not sufficiently pled that he suffers a real or immediate threat. Without this element, there can be

---

[1] Count III also alleges assault against non-moving Defendant Baer.
[2] The Court previously dismissed the request for injunctive relief as it relates to Defendant Baer. (Doc. 36).

no showing of irreparable injury. Additionally, Plaintiff's claim is void of the remaining elements and makes no mention of or reference to the balance between the harm and the injury, the probability that Plaintiff would succeed on the merits, or how a preliminary injunction would affect the public interest. Plaintiff failed to meet his burden and has not pled that injunctive relief is warranted. Accordingly, Plaintiff's request for injunctive relief is dismissed.

### B. Plaintiff's claim for declaratory relief is dismissed

Plaintiff makes a demand for declaratory relief, specifically asking this Court to enter a declaratory judgment on the issue of whether Defendants' policies, pattern of practice, lack of supervision, failure to trains, acts and/or omissions violate the Fourth Amendment to the Constitution, thereby constituting excessive force in violation of federal law and Missouri state law.

A complaint for declaratory relief must set forth facts establishing: (1) the existence of a judiciable controversy, and (2) that the plaintiff has no adequate remedy at law. Declaratory judgments can be filed in federal court pursuant to Fed. R. Civ. P. 57 and pursuant to 28 U.S.C. §2201. However, in order to file a request for a declaratory judgment, an actual controversy must exist, specifically a concrete dispute between the parties with adverse legal interests, and the plaintiff must seek "specific relief through a decree of conclusive characters, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937). The burden of establishing the existence of an actual controversy rests with the party seeking the declaratory judgment. *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95 (1993).

To determine whether an "actual controversy" exists in the declaratory-judgment context, district courts consider whether the facts alleged under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A declaratory judgment is not used where an adequate remedy already exists at law. *Thompson v. City of St. Peters*, 220 F.Supp.3d 975 (Mo. E.D. 2016). In other words, the plaintiff must plead that he would not be fully compensated through a properly alleged claim, seeking an award of damages. *Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir. 2003).

Plaintiff has not plead facts establishing that Plaintiff lacks an adequate remedy at law. The term 'adequate remedy at law' generally means that damages will not adequately compensate the plaintiff for the injury or threatened injury or that the plaintiff would be faced with a multiplicity of suits at law. *Kelly v. Golden*, 352 F.3d 344 (8th Cir. 2003). In fact, Plaintiff makes no mention of and fails to allude to the fact that Plaintiff has an inadequate remedy at law or that damages will not adequately compensate for Plaintiff's alleged injury. Secondly, an adequate remedy at law exists for Plaintiff individually, specifically, a suit for damages for use of excessive force, which Plaintiff is pursuing in conjunction with his request for declaratory relief. Where a Complaint states only conclusions and contains no ultimate facts which support those conclusions, a motion to dismiss is properly granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Therefore, Plaintiff's request for declaratory relief is dismissed.

### C. Centralia Police Department is dismissed as a party

The capacity to be sued is set forth in Rule 17(b) of the Federal Rules of Civil Procedure. Relevant here, the capacity to be sued is determined by the law of the state where the court is located. Fed R. Civ. 17(b)(3). Several courts have held that municipal departments, such as police departments, cannot be sued unless statutory authorization to be sued has been given to the departments. *See Am. Fire Alarm Co. v. Bd. of Police Comm'rs of Kan. City*, 277 S.W. 114,

116 (1920); *Ketchum v. City of Memphis Ark.*, 974 F.2d 81, 82 (8th Cir. 1992)(finding the West Memphis Police Department was not a suable entity); *Atkins v. City of Columbia*, 2016 WL 4126549 at *10 (W.D. Mo. Aug. 2, 2016)(stating the Columbia Police Department was not a suable entity); *Walker v. Kan. City Police Dep't*, 2010 WL 2720720 at *1 (W.D. Mo. July 6, 2010)(finding the Kansas City Missouri Police Department was not a suable entity); *Kern v. City of Gerald*, 2008 WL 4831775, at *2 (E.D. Mo. Nov. 4, 2008) (dismissing the plaintiff's claims against the police department because it was not a suable entity); *Estes v. Lederle*, 2007 WL 2693823, at *2 (E.D. Mo. Sept. 10, 2007) (finding that the St. Ann Police Department is not a suable entity). Plaintiff does not plead any statutory authority establishing the ability to sue Centralia Police Department and does not set out in the Complaint that Centralia Police Department is a separate legal entity amenable to suit. Accordingly, Centralia Police Department is dismissed as a party in the above-captioned case.

### D. Count I

Count I of Plaintiff's Complaint pertains to a 42 U.S.C. § 1983 suit for unlawful arrest and use of excessive force against Defendant Dulany. Defendants argue that Count I should be dismissed as it pertains to Defendant Dulany in both his official and individual capacities based on the doctrines of official and qualified immunity. The Court finds that Dulany is not shielded by official nor qualified immunity at this stage and therefore Count I is not dismissed against Defendant Dulany.

#### a. Official immunity does not apply to Dulany under the facts pled

Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties. *McLean v. Gordon*, 548 F.3d 613, 617 (8th Cir. 2008). "Police officers

are not liable for negligent acts that are related to discretionary functions.... But official immunity does not apply to discretionary acts done in bad faith or with malice." *Wealot v. Brooks,* 865 F.3d 1119, 1129 (8th Cir. 2017). Bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury. *Wealot v. Brooks*, 865 F.3d 1119 (8th Cir. 2017). A finding of malice requires conduct which is so reckless or wantonly and willfully in disregard of one's right that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive. *Id.* at 1128. Acting with malice requires an actual intent to cause injury. *Id.* Bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive. *Id.*

Defendants argue that Plaintiff sets forth no facts sufficiently showing that Dulany acted with the intent to cause injury to Plaintiff. This is plainly untrue. The allegations in the Complaint primarily allege that Dulany's actions in Plaintiff's arrest and seizure were conducted both in bad faith and with malice. The facts provided by Plaintiff, if true, strongly support the allegations. Accordingly, official immunity does not apply to Dulany for purposes of Count I and Count I is not dismissed against Dulany in his official capacity.

**b. Qualified immunity does not apply to Dulany under the facts pled**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); see also *Pearson v. Callahan*, 555 U.S. 233, 231 (2009). The relevant, dispositive inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003). Finally, the Court must evaluate the defense of qualified immunity "from the perspective of a reasonable police officer based on facts available to the officer at the time of the alleged constitutional violation." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The inquiry on a motion to dismiss brought by an official seeking qualified immunity requires the Court to consider: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). In order to assert that Defendant Dulany violated a constitutional right, the Plaintiff must plead facts sufficient to allege that Dulany acted unreasonably. *Anderson* at 638. To prevail on a motion to dismiss on qualified immunity grounds, defendants must show they are entitled to qualified immunity on the face of the complaint. *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (citing *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)).

The Fourth Amendment protects individuals against law enforcement's use of unreasonable force during seizure. In that regard, Plaintiff has alleged that when Dulany stopped his vehicle on May 19, 2019, forcibly removed Plaintiff from his vehicle, and then threw him to the ground causing the severe injury to Plaintiff's shoulder, Dulany used excessive force.

As to whether to facts shown by Plaintiff make out a violation of a constitutional right, this requirement is met with respect to Plaintiff's allegations. Plaintiff pleads in detail alleged actions by Dulany that plausibly state a claim for excessive force in violation of the Fourth Amendment. Second, as to whether the right at issue was clearly established at the time of

Defendant Dulany's alleged misconduct, this is also clearly met. The right to be free from excessive force during seizure was undoubtedly "clearly established" at the time of Plaintiff's arrest in May of 2019. Therefore, qualified immunity does not apply to Dulany for purposes of Count I and Count I is not dismissed against Dulany is his individual capacity.

E. **Count II**

Count II alleges violations of 42 U.S.C. § 1983 for unlawful arrest and excessive force for failure against the City. Defendants argue that Plaintiff's claim fails as a matter of law, because a municipality can be sued under § 1983 for an officer's misconduct only where the misconduct is alleged to have implemented or executed a policy, ordinance, regulation, decision, or custom of the municipality. *Monnell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality cannot be held liable under § 1983 on a respondeat superior theory. *Id*. at 691. In Monell, the Supreme Court required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury. *Bd. of Cty. Comm'rs of Bryan Cty. Okla. v. Brown*, 520 U.S. 391, 403 (1997). A plaintiff cannot establish liability by only identifying conduct properly attributable to the municipality; instead, a "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must plead a direct causal link between the municipal action and the deprivation of federal rights. *Id*. at 404.

A plaintiff must plead facts plausibly showing that the alleged policy or custom subjects the municipality to liability under *Monell. Twombly*, 556 U.S. at 678-680. The elements of an official policy claim include deprivation of a plaintiff's constitutional right that results from the municipality's official policy. It is not enough for the plaintiff to show that the municipality

employed a person who violated the plaintiff's rights. The plaintiff must show that the violation resulted from the municipality's official policy. *Monell* at 691. Additionally, the elements of a custom claim are: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or a tacit authorization of such conduct by the municipality's officials after notice of the misconduct; and (3) the pattern of misconduct must be moving force behind the plaintiff's injury. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff fails to plead any facts suggesting the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct. Plaintiff attempts to argue that Count II should not be dismissed against the City as the City had knowledge or notice of Defendant Baer's illegal behavior and sexual deviancy, and that the City went so far as to aid and abet Defendant Baer's illegal behavior. Plaintiff did not plead any actual facts indicating that the City allegedly had notice of Defendants Dulany's or Baer's alleged propensity to use excessive force and engage in illegal/unlawful arrests. Furthermore, Baer's illegal sexual misconduct and/or behavior has no bearing on the alleged violations that led to the harm of Plaintiff. Even if the City was aware of Baer's sexual misconduct prior to Plaintiff's arrest, Plaintiff does not argue that the alleged misconduct led to any injury to Plaintiff. Accordingly, the Count II is dismissed against the City. As noted above, Centralia Police Department is dismissed as a party to the case. Therefore, Count II is dismissed in its entirety.

F. **Counts III and IV**

Counts III and IV allege the intentional torts of assault and battery respectively against Dulany and the City.

a. **Sovereign immunity applies to the City**

Sovereign immunity has existed by statute in Missouri since 1977, with certain exceptions that Missouri courts construe narrowly. Specifically, Revised Statute of Missouri § 537.600, provides that municipalities generally retain sovereign immunity for tort claims unless an express exception applies. Review of the statute demonstrates that sovereign immunity can be waived, for example, in automobile cases and cases involving injury caused by a dangerous condition of public property. Additionally, Missouri Courts have long held that for a plaintiff to successfully bring a tort claim against a municipality, the plaintiff must plead specific facts that the municipality falls under one of the statutory exceptions. Epps v. City of Pine Lawn, 353 F.3d 588, 594 (8th Cir. 2003). Plaintiff's allegations are void of any specific facts suggesting that the City falls under one of the statutory exceptions, permitting Plaintiff to bring suit against the municipality for an intentional tort.

Plaintiff attempts to argue that 42 U.S.C. § 1983 prohibits a defense of sovereign immunity. Courts have noted that while § 1983 provides a mechanism for individuals to sue state actors for violations of federal laws; it is not concerned with violations of state law, nor does it preempt state-law claims. *Richardson v. University of Texas Sys.*, 2019 WL 5306782 (W.D. Tex. 2019). In *Richardson*, the court held that § 1983 is not a vehicle to sue state employees for violations of state laws, such as state tort laws. Id. Thus, the existence of a § 1983 claim did not preempt application of the statutory immunity provisions to the plaintiff's state law tort claims. *Id*. Supreme Court case *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) concluded that § 1983 does not disturb a state's sovereign immunity and right not to be sued. Accordingly, Counts III and IV are dismissed against the City.

**b. Dulany**

Defendants argue that Counts III and IV should be dismissed against Dulany in both his official and individual capacities, because sovereign immunity applies to Dulany in his official capacity and official immunity in his individual capacity.

### i. Sovereign immunity applies to Dulany in his official capacity

When a cause of action is asserted against a state official in his official capacity, the action is considered to be one against the state. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 72 (1989). The United States Supreme Court held that "obviously, state officials literally are persons, however, a suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

This theory was further evaluated in the case of *Shell v. Ebker*, in which the plaintiff brought a false imprisonment claim and battery claim against the former sheriff of Gasconade County, Missouri, along with a § 1983 claim. 2006 WL 1026982 (Mo. E.D. 2006). The sheriff successfully pursued dismissal of the tort claims under the doctrine of sovereign immunity. *Id*. at *8. The plaintiff asserted that sovereign immunity did not apply to intentional torts made by public employees. *Id*. at *9. In that case, the Missouri Court concluded that the plaintiff's intentional tort claims were unfounded, noting several decisions in which intentional torts were included in the protection of sovereign immunity. *See e.g.*, *Credit Acceptance v. Smith*, 991 S.W.2d 710, 721 (Mo. Ct. App. 1999) (city entitled to qualified immunity on conversion claim); *Mitchell v. Village of Edmundson*, 891 S.W.2d 848, 850 (Mo. Ct. App. 1995) (holding that intentional torts have consistently been found to fall within the shield of sovereign immunity); *Carmelo v. Miller*, 569 S.W.2d 365, 267-68 (Mo. Ct. App. 1978) (holding that sovereign immunity applied to a claim for assault and battery and false imprisonment by a police officer);

*McBride v. Clark*, 2006 WL 581139, *24 (W.D. Mo. Mar. 8, 2006) (holding that under Missouri law, "intentional torts have consistently been found to fall within the shield of sovereign immunity.") (quoting *Harden v. St. Louis County*, 2005 WL 1661505 (E.D. Mo. July 5, 2005)).

In essence, Plaintiff's assault and battery claim against Dulany is construed as an assault and battery claim against the City. *Wirken v. Miller*, 978 S.W.2d 60, 62 (Mo. Ct. App. 1998). Therefore, sovereign immunity applies to Dulany for Plaintiff's tort claims and Counts III and IV are dismissed against Dulany in his official capacity.

### ii. Official immunity does not apply to Dulany in his individual capacity

Under the doctrine of official immunity, public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions. *Porter v. Williams*, 436 F.3d 917, 921 (8th Cir. 2006). However, official immunity does not apply where the discretionary act is "willfully wrong or done with malice or corruption." *Id.* Similar to the discussion above for Count I, Plaintiff pleads adequate facts at this stage in litigation to support the allegations that Dulany acted "willfully wrong" or acted "with malice or corruption." Accordingly, official immunity does not apply to Dulany and Counts III and IV are not dismissed against him in his individual capacity.

### G. Count V

Plaintiff's Count V pertains to an allegation of intentional infliction of emotional distress against the City and Dulany. Similar to Counts III and IV, Count V of Plaintiff's Complaint pertains to a state law tort claim. Therefore, the City and Dulany in his official capacity are immune from suit under the doctrine of sovereign immunity.

In order to state a claim for intentional infliction of emotional distress, the Plaintiff must plead that: (1) the defendants' conduct was extreme and outrageous; (2) the conduct was

intentional or done recklessly; (3) the conduct caused severe emotional distress that resulted in bodily harm. *Gillis v. Principia Corp.*, 832 F.3d 865 (8th Cir. 2016). Courts have further held that the defendants' conduct must be more than simply malicious or intentional; the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Gillis* at 873. The conduct must also be "intended only to cause extreme emotional distress to the victim." *Id.*

Plaintiff's Complaint merely indicates that Defendant Dulany "acted intentionally or recklessly with regard to the [Plaintiff] and that his conduct was extreme and outrageous and was the cause of or contributed to cause several emotional distress" to Plaintiff. Moreover, in Missouri, a claim for intentional infliction of emotional distress will not lie when the action amounts to a traditional tort and was not intended to cause extreme emotional distress to the victim. *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309 (Mo. E.D. 2010). As such, the allegation for intentional infliction of emotional distress will be viewed as duplicative in nature of other tort allegations and recovery must be had under the appropriate traditional tort action. *Id.* at 322. Plaintiff's Complaint fails to plead that Defendants' actions were intended to cause extreme emotional distress to Plaintiff and the actions pled amount to the traditional torts of assault and battery already alleged in Plaintiff's Complaint. As such, Count V is dismissed in its entirety. Damages relating to emotional distress may be recoverable under damages relating to the assault and battery allegations in Counts III and IV.

### H. Count VI

Plaintiff's Count VI in his Complaint pertains to negligent hiring, negligent retention, and negligent supervision against Defendants Bias and the City. To establish a claim for negligent

hiring or retention [of an employee], a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." *Stars Investment Group, LLC v. AT&T Corp.*, 2017 WL 747610 (Mo. E.D. Feb. 27, 2017); *Clevenger v. Howard*, 2015 WL 7738372 (Mo. W.D. Nov. 30, 2015). A cause for negligent hiring or negligent supervision requires "evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." *Clevenger* at *3. In a claim for negligent hiring, the employee misconduct must be consistent with the employee's particular dangerous proclivity exhibited by the prior acts of misconduct. *Id.*

Here, Plaintiff has failed to plead facts that Defendant Dulany had dangerous proclivities or was incompetent beyond the single instance set forth in the underlying claim. Further, Plaintiff makes no mention as to whether Dulany's alleged misconduct is consistent with his "particular dangerous proclivity exhibited by prior acts of misconduct" because no prior acts of misconduct are alleged against Dulany. While Plaintiff makes reference to Defendant Baer's subsequent termination from the Police Department in October of 2019 after being charged with the crime of using interstate commerce for the purpose of engaging in illicit sexual conduct with a minor, this subsequent action has no bearing on the allegations at hand. Plaintiff also asserts that the Police Department has been "long known" for staffing itself with "cast-offs" from other police departments, many of whom were terminated from prior employment due to misconduct, but such an allegation alone does not suffice to show that the City knew or should have known of Baer's or Dulany's "dangerous proclivities".

Additionally, Plaintiff failed to meet the second prong as set forth *Stars Investment*, in which Plaintiff must establish that the employer's negligence was the proximate cause of the

Plaintiff's injuries. *Stars Investment* at *7. Instead, Plaintiff pleads facts that are "merely consistent with" a defendant's liability. *Twombly* at 570. For example, Plaintiff contends that the City failed to properly, hire, train, retain and supervise employees, and that as a proximate cause of the City's negligence, Plaintiff suffered damages. Such statements fail to specifically show how the employer's alleged negligence caused Plaintiff's injuries. As such, Plaintiff failed to meet the standard necessary to establish a negligent hiring or retention claim, and thus, Plaintiff's negligent hiring claim fails as a matter of law. Accordingly, Count VI is dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**.[3] Defendant Centralia Police Department is dismissed as a party to this case. Count I is not dismissed. Count II is dismissed in its entirety. Counts III and IV are dismissed against Defendants City of Centralia Missouri and Brian J. Dulany in his official capacity, but Counts III and IV are not dismissed against Defendant Dulany in his individual capacity. Counts V and VI are dismissed in their entireties. Lastly, Plaintiff's claims for injunctive are declaratory relief are dismissed.

**IT IS SO ORDERED.**

Dated: September 21, 2021   /s/ Douglas Harpool
   **DOUGLAS HARPOOL**
   **United States District Judge**

---

[3] As Defendant Baer is a non-moving party, Counts I, III, and IV are not dismissed against him in either his official or individual capacities.